IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CLAYTON LILES, PERRY CASEY, and
GREGORY HALLEY, Each Individually and
on Behalf of All Others Similarly Situated                PLAINTIFFS

v.                          No. 4:15-cv-469-DPM

ROCK FARMS OF ARKANSAS, LLC, and
ROCKY HARRELL, Individually and d/b/a
Rock Farms of Arkansas                                    DEFENDANTS

ORDER

1. The Court appreciates the parties' helpful, concise, and timely post-trial briefs and regrets its delay in deciding the pending issue. Based on the applicable law and the evidence presented at trial, the Court revises its bench ruling about the commutes. One of those commutes was compensable time; the other was not. Here's why.

2. One thorough daily inspection was required by law, so it was a principal activity. 49 C.F.R. § 396.11 & § 396.13; *Barrentine v. Arkansas-Best Freight System, Inc.*, 750 F.2d 47, 50 (8th Cir. 1984). And, in this case, the morning inspection started the drivers' continuous workday. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28–30 (2005); *Dooley v. Liberty Mutual Insurance Co.*, 307

F. Supp. 2d 234, 242–49 (D. Mass. 2004). The Portal-to-Portal Act's clear exclusion of commuting time, therefore, doesn't apply to the first morning drive to the quarry. Each driver is entitled to be paid for half an hour for that work.

The Court concludes, though, that the whistle blew when each driver delivered his last load, not when he got home (or to Wal-Mart in Halley's situation). Remember: The agreement to keep the trucks at the drivers' houses was for the drivers' convenience, too. When Rock Farms and Harrell suggested changing the drill to start and finish at the shop, Liles objected strongly, and the employers backed off. If that change had been made, the Portal-to-Portal Act's exclusion would cover all time traveling to and from the shop. Fairness to both sides therefore requires particular attention to the applicable federal regulations and what actually happened here.

As the Court said from the bench, the drivers' two inspections were really parts of one whole, which might be more or less thorough in the morning or in the evening, depending on circumstances. The Court's tentative conclusion is confirmed by 49 C.F.R. § 396.11 & § 396.13, which together help achieve an important safety goal: systematic inspection, repair,

and maintenance of commercial vehicles. 49 C.F.R. § 396.3(a). As applied to our facts, these regulations require one thorough daily inspection. They contemplate this event happening at the end of a day's work. 49 C.F.R. § 396.11(a)(1). They also contemplate a written report, which didn't happen here either. 49 C.F.R. § 396.11(a)(1) & (2). A day's-end inspection would allow for repairs, based on any reported problems, before the truck went back on the road. 49 C.F.R. § 396.11(a)(3). But if no problems were found, the driver could begin the next workday without another comprehensive inspection, as long as he was "satisfied that the motor vehicle [was] in safe operating condition." 49 C.F.R. § 396.13(a). Part of making this decision was reviewing the last inspection report. And if that report noted defects or deficiencies, then the driver had to sign it—to confirm review and that complete repairs had been done. 49 C.F.R. § 396.13(b) & (c).

The regulations don't require two full-dress inspections. Compare the specifics mandated by § 396.11(a)(1) (inspect service brakes, parking brake, steering mechanism, lighting devices and reflectors, tires, horn, windshield wipers, rear vision mirrors, coupling devices, wheels and rims, and emergency equipment) with § 396.13(a)'s general mandate (driver must be

satisfied that truck is in safe operating condition). If a thorough inspection had been done the night before, a quick confirming look in the morning would suffice. As the title of § 396.13 — "Driver Inspection" — indicates, this second look is an inspection. But it need not be a comprehensive one, depending on all the circumstances. Whatever the timing of the comprehensive inspection, the regulatory goal is met when drivers operate safe, inspected vehicles on the highway.*

The facts sometimes don't track the words in the book. Here, for example, there were no inspection reports. Harrell testified that he required his drivers to inspect the trucks, and intended that they always follow the law. But their usual main inspection was in the morning before starting work, not after their workday ended. All the drivers confirmed this, with the hedge that they occasionally did the full-dress inspection in the evening instead. Each driver was always satisfied with the safety of his truck before getting on the highway to start the day's work. Any evening inspection stole a march on

---

*Rock Farms and Harrell maintain their argument that these drivers operated only in *intrastate* commerce, which would make these regulations inapplicable. Noted, as a general matter. But Harrell testified that applicable federal regulations required a thorough pre-trip inspection. That acknowledgment puts these regulations in play.

what Rock Farms and Harrell required, and what the drivers usually did, in the morning. A day's end look was prudent and efficient. This time was, combined with time during the morning inspection, compensable. But, lacking a clear mandate either in law or from the employer, doing a second full inspection every day was not a principal activity. The brevity of the drivers' second check, both as a matter of fact and of law, undermines the effort to stay on the clock during the drive home. Here, the evening check therefore didn't extend the drivers' workday beyond the last point of delivery. And the evening trip was a standard commute, uncompensable under the Portal-to-Portal Act's plain words. 29 U.S.C. § 254(a).

**3.** These drivers are entitled to half an hour per day more pay for their first morning trip. Calculations for the Judgment due by 10 March 2017.

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

24 February 2017